IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| BRONSON NAKAAHIKI, #A6001816,[1] <br><br> Plaintiff, <br><br> vs. <br><br> KAUAI POLICE DEPARTMENT OFFICERS, <br><br> Defendants. | CIVIL NO. 25-00401 DKW-KJM <br><br> ORDER DISMISSING SECOND AMENDED COMPLAINT WITH PARTIAL LEAVE TO AMEND |

Before the Court is pro se Plaintiff Bronson Nakaahiki's Second Amended Prisoner Civil Rights Complaint (SAC) brought pursuant to 42 U.S.C. § 1983.[2] ECF No. 7.  In the SAC, Nakaahiki asserts claims against an unspecified number of unnamed Kauai Police Department ("KPD") officers based on a collection of events, the first of which occurred sometime in February 2025.  ECF No. 7 at PageID.64-66, 68-70.  After conducting the required screening pursuant to

_____

[1]Nakaahiki is currently incarcerated at the Halawa Correctional Facility.  *See* VINE, https://vinelink.vineapps.com/search/HI/Person (select "ID Number"; enter "A6001816"; and select "Search") (last visited Nov. 3, 2025).

[2]Although Nakaahiki cites Rule 8 of the Federal Rules of Civil Procedure as the basis for this action, *see* ECF No. 7 at PageID.60, as Nakaahiki acknowledged in both of his earlier pleadings, *see* ECF No. 1 at PageID.1; ECF No. 5 at PageID.33, 42 U.S.C. § 1983 provides the relevant cause of action for his claims.  *See Anderson v. Warner*, 451 F.3d 1063, 1067 (9th Cir. 2006) ("Section 1983 does not create any substantive rights, but is instead a vehicle by which plaintiffs can bring federal constitutional and statutory challenges to actions by state and local officials.").

28 U.S.C. §§ 1915(e)(2) and 1915A(a), the Court DISMISSES the SAC with

partial leave to amend.  If Nakaahiki wants to proceed, he must file an amended

pleading that cures the below-described deficiencies in his excessive force claims

in Count II (and those claims only) on or before November 24, 2025.  Nakaahiki's

other claims are DISMISSED with prejudice, and those claims may not be

included in any amended pleading that Nakaahiki might file.  Alternatively, instead

of filing an amended pleading, Nakaahiki may inform the Court in writing on or

before November 24, 2025 that he would like to voluntarily dismiss this action

pursuant to Federal Rule of Civil Procedure 41(a)(1), and such a dismissal will not

count as a "strike" under 28 U.S.C. § 1915(g).[3]

## I.    STATUTORY SCREENING

The Court is required to screen all in forma pauperis prisoner complaints

filed against government officials, pursuant to 28 U.S.C. §§ 1915(e)(2) and

1915A(a).  *See Byrd v. Phx. Police Dep't*, 885 F.3d 639, 641 (9th Cir. 2018).

Claims or complaints that are frivolous, malicious, fail to state a claim for relief, or

seek damages from defendants who are immune from suit must be dismissed.  *See*

*Lopez v. Smith*, 203 F.3d 1122, 1126–27 (9th Cir. 2000) (en banc); *Rhodes v.*

*Robinson*, 621 F.3d 1002, 1004 (9th Cir. 2010).

---

[3]In general, 28 U.S.C. § 1915(g) prohibits a prisoner from filing a civil action in forma pauperis
if he or she has on three or more occasions brought an action in federal court that was dismissed
as frivolous or malicious, or for failing to state a claim upon which relief may be granted.

Screening under 28 U.S.C. §§ 1915(e)(2) and 1915A(a) involves the same standard as that used under Federal Rule of Civil Procedure 12(b)(6). *See Rosati v. Igbinoso*, 791 F.3d 1037, 1039 (9th Cir. 2015) (per curiam). Under this standard, a complaint must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and citation omitted). A claim is "plausible" when the facts alleged support a reasonable inference that the plaintiff is entitled to relief from a specific defendant for specific misconduct. *See id.*

In conducting this screening, the Court liberally construes pro se litigants' pleadings and resolves all doubts in their favor. *See Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010) (citations omitted). The Court must grant leave to amend if it appears the plaintiff can correct the defects in the complaint. *See Lopez*, 203 F.3d at 1130. When a claim cannot be saved by amendment, however, dismissal with prejudice is appropriate. *See Sylvia Landfield Tr. v. City of Los Angeles*, 729 F.3d 1189, 1196 (9th Cir. 2013).

## II.    <u>BACKGROUND[4]</u>

Sometime in February 2025, two KPD officers pulled Nakaahiki over as he was driving. ECF No. 7 at PageID.65. The officers told Nakaahiki that he had an

---

[4]The SAC alleges the following facts, which the Court accepts as true for the purposes of screening. *See Nordstrom v. Ryan*, 762 F.3d 903, 906 (9th Cir. 2014).

outstanding warrant.  *Id.*  At some point after Nakaahiki asked to see the warrant, he was "yanked" out of his car and "slammed" to the ground by the unidentified officers.  *Id.*  According to Nakaahiki, he was not "resisting" and was not "armed and dangerous."  *Id.*

On March 15, 2025, three men "mob[b]ed" Nakaahiki after he crashed a vehicle he was driving into their pasture.  *Id.* at PageID.64.  The men dislocated Nakaahiki's shoulder, "messed up" his jaw, and caused his eyes to swell shut.  *Id.* When KPD officers arrived at the scene, they arrested Nakaahiki, but not the three men who had mobbed him.  *Id.*

Nakaahiki also alleges that "every day" since his truck was seized without a warrant, KPD officers have been harassing him.[5]  *Id.* at PageID.66.  According to Nakaahiki, he has been pulled over without "probable cause" and shot with water while he was having a "[nervous] breakdown."  *Id.*

Nakaahiki commenced this lawsuit by signing the original Complaint on September 1, 2025.  *Id.* at PageID.8.  After the Court granted Nakaahiki in forma pauperis status, ECF No. 3, the Court screened and dismissed the original Complaint with partial leave to amend, ECF No. 4.  The Court explained, among other things, that Nakaahiki could not sue the KPD, he had not alleged a plausible municipal liability claim against the County of Kauai, and he could not rely on

---

[5]Nakaahiki does not say when his truck was seized, when he was harassed, or by whom.

4

state criminal statutes to assert claims under 42 U.S.C. § 1983.  *Id.* at PageID.24-30.

In his First Amended Complaint (FAC), Nakaahiki reasserted claims against an unspecified number of unnamed KPD officers based on the same undated events described in the original Complaint.  *Id.* at 37-39, 41-43.  In dismissing the FAC, the Court explained, among other things, that the pleading did not meet the requirements of Rule 8 of the Federal Rules of Civil Procedure, and it did not appear that Nakaahiki's various claims were properly joined in the same lawsuit.  ECF No. 6 at PageID.49-52.  The Court also identified the deficiencies in Nakaahiki's various claims.  *Id.* at PageID.53-57.

The Court received the SAC on October 23, 2025.  ECF No. 7.  In the SAC, Nakaahiki again asserts a variety of claims against an unspecified number of KPD officers in both their individual and official capacities.  *See id.* at PageID.60.  Nakaahiki's claims can be organized into three groups.  The first group relates to the March 15, 2025 incident.  Nakaahiki alleges that police should have arrested the three men who mobbed and beat him (Count I); those involved should be charged with negligent injury in the first degree (Count IV) and negligent injury in the second degree (Count V); and Nakaahiki's equal protection rights were violated on account of an unidentified disability (Count VI).  *Id.* at PageID.64, 68-70.  The second group includes excessive force claims against two officers based

on the encounter that occurred sometime in February 2025 (Count II). *Id.* at

PageID.65. Finally, the third group includes claims based on alleged harassment

that Nakaahiki experienced after KPD "took [his] truck" (Count III). *Id.* at

PageID.66. Nakaahiki seeks $900 billion in damages. *Id.* at PageID.67.

### III.   DISCUSSION

### A.   Legal Framework for Claims under 42 U.S.C. § 1983

"Section 1983 provides a cause of action against '[e]very person who, under

color of' law deprives another of 'rights, privileges, or immunities secured by the

Constitution.'" *Cornel v. Hawaii*, 37 F.4th 527, 531 (9th Cir. 2022) (quoting

42 U.S.C. § 1983) (alteration in original). To state a claim under 42 U.S.C. §1983,

a plaintiff must allege: (1) that a right secured by the Constitution or laws of the

United States was violated; and (2) that the alleged violation was committed by a

person acting under color of state law. *See West v. Atkins*, 487 U.S. 42, 48 (1988);

*Park v. City & County of Honolulu*, 952 F.3d 1136, 1140 (9th Cir. 2020).

### B.   Official Capacity Claims

Nakaahiki names the unidentified KPD officers in both their individual and

official capacities. ECF No. 7 at PageID.60. As the Supreme Court has explained,

"[o]fficial-capacity suits . . . 'generally represent only another way of pleading an

action against an entity of which an officer is an agent.'" *Kentucky v. Graham*,

473 U.S. 159, 165-66 (1985) (quoting *Monell v. N.Y. City Dep't of Soc. Servs.*, 436

U.S. 658, 690, n. 55 (1978)).  Thus, Nakaahiki's claims against any KPD officers

in their official capacities must meet the standard for a municipal liability claim

under *Monell*.

As the Court previously explained to Nakaahiki, ECF No. 4 at PageID.25-

26, *Monell* "established that municipalities can be liable for infringement of

constitutional rights, under certain circumstances."  *Horton ex rel. Horton v. City*

*of Santa Maria*, 915 F.3d 592, 602 (9th Cir. 2019).  "In particular, municipalities

may be liable under § 1983 for constitutional injuries pursuant to (1) an official

policy; (2) a pervasive practice or custom; (3) a failure to train, supervise, or

discipline; or (4) a decision or act by a final policymaker."  *Id.* at 602-03.  "A

plaintiff must . . . show 'deliberate action attributable to the municipality [that]

directly caused a deprivation of federal rights.'"  *Id.* at 603 (quoting *Bd. of Cnty.*

*Comm'rs v. Brown*, 520 U.S. 397, 415 (1997)).  "[W]hile *Monell* claims cannot

predicate municipal liability for constitutional violations of its officers under the

theory of respondeat superior, such claims are still contingent on a violation of

constitutional rights."  *Lockett v. Cnty. of Los Angeles*, 977 F.3d 737, 741 (9th Cir.

2020) (internal quotation marks and citations omitted).

As before, Nakaahiki has not plausibly alleged that the KPD officers acted

pursuant to an official policy; that their actions were consistent with a pervasive

practice or custom; that the KPD failed to train, supervise, or discipline the

officers; or that the officers' actions were the result of decision of a final

policymaker.  Indeed, the SAC does not include any factual allegations related to

the County of Kauai.  Because Nakaahiki has not stated a plausible *Monell* claim,

despite having three opportunities to do so, Nakaahiki's official-capacity claims

are DISMISSED with prejudice.

**C.    Joinder**

Nakaahiki attempts to join three groups of claims in a single lawsuit—that

is, claims based on a March 15, 2025 event (Counts I, IV, V, and VI), excessive

force claims based on a February 2025 encounter with two KPD officers (Count

II), and claims based on ongoing harassment (Count III).  ECF No. 7 at PageID.64-

66, 68-70.

As the Court has already explained to Nakaahiki, *see* ECF No. 6 at

PageID.51-52, when a single defendant is named, a party may bring as many

claims as it has against that defendant.  Fed. R. Civ. P. 18(a).  "To name different

defendants in the same lawsuit, however, a plaintiff must satisfy Rule 20,

governing joinder of parties."  *Weeks v. Espinda*, No. 10-00305, 2010 WL

2218631, at *3 (D. Haw. June 2, 2010).  Rule 20(a)(2) allows multiple defendants

to be joined in one action only if (1) any right to relief is asserted against them

jointly, severally, or with respect to or arising out of the same transaction,

occurrence, or series of transactions or occurrences; and (2) any question of law or

fact common to all defendants will arise in the action. Fed. R. Civ. P. 20(a)(2)(A),

(B). "Unrelated claims involving different defendants belong in different suits."

*What v. Honolulu Police Dep't*, No. 13-00373, 2014 WL 176610, at *4 (D. Haw.

Jan. 13, 2014).

Nakaahiki does not allege that the three groups of claims involve the same

officers, nor has he shown that his claims across the three groups arise from the

same transaction or occurrence. Thus, Nakaahiki's three groups of claims do not

belong in the same lawsuit. For the following reasons, the Court will give

Nakaahiki one more opportunity to amend his excessive force claims in Count II,

and his remaining claims are DISMISSED with prejudice.

**D.    Law Enforcement**

In Count I, Nakaahiki alleges that KPD officers chose not to arrest three men

who "mob[b]ed" and beat him. ECF No. 7 at PageID.64.

As the Court previously explained to Nakaahiki, he cannot pursue claims

based solely on a police officer's decision regarding an investigation or arrest. *See*

*Van Hook v. Idaho*, No. 1:21-CV-00199, 2022 WL 344439, at *9 (D. Idaho Feb. 4,

2022) ("Plaintiff has no constitutional or common law right to have his civil rights

complaints and potential criminal complaints investigated or prosecuted by the

FBI, the United States Attorney General, or any other governmental entity."); *see*

*also Est. of Macias v. Ihde*, 219 F.3d 1018, 1028 (9th Cir. 2000) ("It is well

established that there is no constitutional right to be protected by the state against being murdered by criminals or madmen.") (cleaned up).

Although Nakaahiki alleges that the three men dislocated his shoulder, "messed up" his jaw, and caused his eyes to swell shut, *see* ECF No. 7 at PageID.64, he does not allege that any KPD officer had anything to do with these injuries. Nakaahiki's claims in Count I are therefore DISMISSED with prejudice.

## E.    Excessive Force

In Count II, Nakaahiki alleges that two KPD officers used excessive force during an incident sometime in February 2025. ECF No. 7 at PageID.65.

"The operative question in excessive force cases is whether the totality of the circumstances justifie[s] a particular sort of search or seizure." *Cnty. of Los Angeles v. Mendez*, 581 U.S. 420, 427–28 (2017) (quotation marks and citation omitted) (brackets in original). "The reasonableness of the use of force is evaluated under an 'objective' inquiry that pays careful attention to the facts and circumstances of each particular case." *Id.* at 428 (quotation marks omitted). "Whether a use of force was reasonable will depend on the facts of the particular case, including, but not limited to, whether the suspect posed an immediate threat to anyone, whether the suspect resisted or attempted to evade arrest, and the severity of the crime at issue." *S.R. Nehad v. Browder*, 929 F.3d 1125, 1132 (9th Cir. 2019). In addition, "[t]he 'reasonableness' of a particular use of force must be

judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham v. Connor*, 490 U.S. 386, 396 (1989). "That inquiry is dispositive: When an officer carries out a seizure that is reasonable, taking into account all relevant circumstances, there is no valid excessive force claim." *Mendez*, 581 U.S. at 428.

Before any excessive force claims based on the allegations in Count II can proceed or be properly evaluated, Nakaahiki must provide additional information regarding his encounter with the two KPD officers.  For example, although Nakaahiki alleges that he did not resist arrest, "[was not] considered armed and [dangerous]," and was not provided with the warrant the officers were apparently there to execute, ECF No. 7 at PageID.65, Nakaahiki does not say what instructions (if any) the officers gave him, whether he complied with any instructions given, whether he was provided the basis underlying the warrant, whether one or both officers yanked him out of his car, what that looked like, what happened after he was "slammed" to the ground, and what injuries (if any) he experienced and what caused them.  *See Blankenhorn v. City of Orange*, 485 F.3d 463, 477 (9th Cir. 2007) ("Neither tackling nor punching a suspect to make an arrest necessarily constitutes excessive force.").  Because it is possible that Nakaahiki can cure the deficiencies in his excessive force claims, these claims (and these claims only) are DISMISSED with leave to amend.

### F.    State Criminal Law

Although Nakaahiki seeks relief solely pursuant to 42 U.S.C. § 1983, in Counts IV and V, he again appears to base some of his claims on state criminal statutes.  *See* ECF No. 7 at PageID.68-69 (referring to "negligent injury in the first" and "negligent injury in the second" degree).  As the Court has twice explained to Nakaahiki, he cannot do this.  *See* ECF No. 4 at PageID.29-30; ECF No. 6 at PageID.56-57.  Nakaahiki's claims in Counts IV and V are therefore DISMISSED with prejudice.  *See Buckheit v. Dennis*, 713 F. Supp. 2d 910, 919 (N.D. Cal. 2010) ("As a general rule, a violation of state law does not lead to liability under § 1983."); *see also Beitch v. Wheeler*, No. CV 15-00872-VBF (GJS), 2015 WL 13752415, at *5 n.3 (C.D. Cal. Nov. 16, 2015) (stating that a violation of a state criminal law provision is not a basis for relief under 42 U.S.C. § 1983), *report and recommendation adopted*, No. CV 15-00872-VBF (GJS), 2015 WL 13762928 (C.D. Cal. Dec. 21, 2015).

### G.    Equal Protection

In Count VI, Nakaahiki again refers to "equality of rights equal protection." ECF No. 7 at PageID.70.

The Fourteenth Amendment provides that "[n]o State shall . . . deny to any person within its jurisdiction the equal protection of the laws."  U.S. Const. amend. XIV, § 1.  "The Equal Protection Clause requires the State to treat all similarly

situated people equally." *Furnace v. Sullivan*, 705 F.3d 1021, 1030 (9th Cir. 2013) (quotation marks and citation omitted).  In general, "[t]o state a claim under 42 U.S.C. § 1983 for a violation of the Equal Protection Clause of the Fourteenth Amendment a plaintiff must show that the defendants acted with an intent or purpose to discriminate against the plaintiff based upon membership in a protected class."  *Id.* (quotation marks and citation omitted).

Despite this previous guidance, Nakaahiki again has not plausibly alleged that he is a member of a protected class, nor has he plausibly alleged that any KPD officer intentionally or purposefully discriminated against him because of that purported membership.  To the extent Nakaahiki now alleges that he has an unidentified "disability," the disabled are not a protected class under the Fourteenth Amendment.  *See Does 1-5 v. Chandler*, 83 F.3d 1150, 1155 (9th Cir. 1996) ("For the purposes of equal protection analysis, the disabled do not constitute a suspect class.").  In addition, Nakaahiki does not describe the nature of his disability, and he does not allege that any KPD officers were aware of and discriminated against him because of that disability.  Nakaahiki's equal protection claims in Count VI are DISMISSED with prejudice.

## H.    Harassment

Finally, Nakaahiki alleges in Count III that unidentified KPD officers have been harassing him "every day" since his truck was taken as evidence.  ECF No. 7

at PageID.66.  Nakaahiki does not say when his truck was purportedly taken, he does not say when he was pulled over or why, nor does he describe the circumstances surrounding him being "[shot] . . . with water."  *Id.*  And, significantly, Nakaahiki does not identify what federal right was allegedly violated.[6]  Nakaahiki's allegations in Count III are therefore too vague and conclusory to state a plausible claim for relief.  *See, e.g.*, *Eager v. Six Unknown Honolulu Police Dep't Officers*, No. Civ. 15-00098, 2015 WL 1608771, at *1-2 (D. Haw. Apr. 10, 2015).  Nakaahiki's claims in Count III are also DISMISSED with prejudice.

I.    **Doe Defendants**

Nakaahiki is reminded that Doe defendants are generally disfavored because it is effectively impossible for the United States Marshals to serve an anonymous defendant.  *See Gillespie v. Civiletti*, 629 F.2d 637, 642 (9th Cir. 1980).  Sometimes, however, a plaintiff cannot know the names of all defendants prior to bringing suit.  In such instances, a plaintiff may refer to unknown defendants as John or Jane Doe, alleging specific facts showing how each Doe defendant violated his rights.  The plaintiff may then use the discovery process to obtain the names of

---

[6]To the extent Nakaahiki suggests that KPD officers stopped him without probable cause, the Court notes that probable cause is not required for police to initiate a traffic stop.  *See United States v. Lopez-Soto*, 205 F.3d 1101, 1104-05 (9th Cir. 2000) ("[T]he Fourth Amendment requires only reasonable suspicion in the context of investigative traffic stops.").

Doe defendants and, once they are identified, seek leave to amend to name those defendants.  But a plaintiff may not use "Doe" placeholders if it is clear that discovery will not uncover their identities, or that the complaint will be dismissed on other grounds.  *Wakefield v. Thompson*, 177 F.3d 1160, 1163 (9th Cir. 1999) (citing *Gillespie*, 629 F.2d at 642).

For his excessive force claims in Count II, Nakaahiki must refer to the unknown KPD officers as John Doe 1, John Doe 2, and so on, and he must allege facts showing how each officer violated his federal rights.  If Nakaahiki can state a plausible claim for relief, he will be granted early discovery to try to identify the officers' names so that the operative pleading can be served on them.

## IV.    LEAVE TO AMEND

The SAC, ECF No. 7, is DISMISSED with partial leave to amend. Nakaahiki must file any amended pleading addressing the flaws in his excessive force claims in Count II (and those claims only) on or before November 24, 2025. All of Nakaahiki's other claims are DISMISSED with prejudice and should not be realleged in any amended pleading.  Nakaahiki may not expand his claims beyond those already alleged in Count II.  Claims that do not properly relate to those in Count II of the SAC are subject to dismissal.

Nakaahiki must comply with the Federal Rules of Civil Procedure and the Local Rules for the District of Hawaii.  Local Rule 10.4 requires that an amended

complaint be complete in itself, without reference to any prior pleading. An amended complaint must be short and plain, comply with Rule 8 of the Federal Rules of Civil Procedure, and be submitted on the Court's prisoner civil rights form. *See* LR99.2(a). An amended complaint will supersede the SAC. *See Ramirez v. Cnty. of San Bernardino*, 806 F.3d 1002, 1008 (9th Cir. 2015). Defendants not renamed and claims not realleged in an amended complaint may be deemed voluntarily dismissed. *See Lacey v. Maricopa Cnty.*, 693 F.3d 896, 928 (9th Cir. 2012).

## V.    28 U.S.C. § 1915(g)

If Nakaahiki fails to file an amended complaint or is unable to amend his claims in Count II to cure their deficiencies, a subsequent dismissal may count as a "strike" under 28 U.S.C. §1915(g). Under this "3-strikes" provision, a prisoner may not bring a civil action or appeal a civil judgment in forma pauperis,

> if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury.

28 U.S.C. § 1915(g).

## VI.    CONCLUSION

(1) The Court DISMISSES the SAC, ECF No. 7, with partial leave to amend.

16

(2) If Nakaahiki wants to proceed with his excessive force claims in Count II, he must file an amended pleading that cures the noted deficiencies in those claims (and those claims only) on or before November 24, 2025.

(3) ALTERNATIVELY, instead of filing an amended pleading, Nakaahiki may inform the Court in writing on or before November 24, 2025, that he would like to voluntarily dismiss this action pursuant to Federal Rule of Civil Procedure 41(a)(1), and such a dismissal will not count as a "strike" under 28 U.S.C. § 1915(g).

(4) Failure to comply with these deadlines may result in AUTOMATIC DISMISSAL of this suit without further notice, and Nakaahiki may incur a strike under 28 U.S.C. § 1915(g).

(5) The Clerk is DIRECTED to send Nakaahiki a blank prisoner civil rights complaint form so that he can comply with this order if he elects to file an amended pleading.

IT IS SO ORDERED.

DATED: November 3, 2025 at Honolulu, Hawaiʻi.



/s/ Derrick K. Watson
Derrick K. Watson
Chief United States District Judge

*Bronson Nakaahiki v. Kauai Police Department Officers*; Civil No. 25-00401 DKW-KJM; **ORDER DISMISSING SECOND AMENDED COMPLAINT WITH PARTIAL LEAVE TO AMEND**