IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| BRONSON NAKAAHIKI, #A6001816,[1]<br><br>Plaintiff,<br><br>vs.<br><br>KAUAI POLICE DEPARTMENT OFFICERS,<br><br>Defendants. | CIVIL NO. 25-00401 DKW-KJM<br><br>ORDER SCREENING THIRD AMENDED COMPLAINT AND GRANTING EARLY DISCOVERY |

Before the Court is pro se Plaintiff Bronson Nakaahiki's Third Amended Prisoner Civil Rights Complaint (TAC) brought pursuant to 42 U.S.C. § 1983.[2] ECF No. 9. In the TAC, Nakaahiki alleges that two unnamed Kauai Police Department (KPD) officers violated his Fourth Amendment rights by using excessive force during a traffic stop in February 2025.[3] Id. at PageID.93-95. After

---

[1] Nakaahiki is currently incarcerated at the Halawa Correctional Facility. See VINE, https://vinelink.vineapps.com/search/HI/Person (select "ID Number"; enter "A6001816"; and select "Search") (last visited Dec. 2, 2025).

[2] While Nakaahiki checked a box identifying his latest pleading as a "Second Amended Complaint," ECF No. 9 at PageID.89, this appears to be a mistake. The Court previously received Nakaahiki's original Complaint on September 17, 2025, ECF No. 1, his First Amended Complaint (FAC) on October 2, 2025, ECF No. 5, and his Second Amended Complaint (SAC) on October 23, 2025, ECF No. 7.

[3] Although Nakaahiki does not specifically cite the Fourth Amendment, it is the relevant constitutional provision. See Graham v. Connor, 490 U.S. 386, 394 (1989) ("Where . . . the

conducting the screening required by 28 U.S.C. §§ 1915(e)(2) and 1915A, the Court concludes that Nakaahiki states potentially cognizable excessive force claims against the officers in their individual capacities. Before this action can proceed, however, Nakaahiki must identify at least one of the two officers. The Court therefore GRANTS Nakaahiki leave to conduct early discovery to determine the names of the KPD officers. Assuming that effort is successful, Nakaahiki may then move to amend the TAC to add at least one of the officers' names. *See* LR10.4. In that instance, the Court will then direct the United States Marshal to serve the TAC. *See* Fed. R. Civ. P. 4(c)(3)

## I.   **STATUTORY SCREENING**

The Court is required to screen all in forma pauperis prisoner complaints filed against government officials, pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(a). *See Byrd v. Phx. Police Dep't*, 885 F.3d 639, 641 (9th Cir. 2018). Claims or complaints that are frivolous, malicious, fail to state a claim for relief, or seek damages from defendants who are immune from suit must be dismissed. *See Lopez v. Smith*, 203 F.3d 1122, 1126–27 (9th Cir. 2000) (en banc); *Rhodes v. Robinson*, 621 F.3d 1002, 1004 (9th Cir. 2010).

---

excessive force claim arises in the context of an arrest or investigatory stop of a free citizen, it is most properly characterized as one invoking the protections of the Fourth Amendment[.]").

2

Screening under 28 U.S.C. §§ 1915(e)(2) and 1915A(a) involves the same standard as that used under Federal Rule of Civil Procedure 12(b)(6). *See Rosati v. Igbinoso*, 791 F.3d 1037, 1039 (9th Cir. 2015) (per curiam). Under this standard, a complaint must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and citation omitted). A claim is "plausible" when the facts alleged support a reasonable inference that the plaintiff is entitled to relief from a specific defendant for specific misconduct. *See id.*

In conducting this screening, the Court liberally construes pro se litigants' pleadings and resolves all doubts in their favor. *See Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010) (citations omitted). The Court must grant leave to amend if it appears the plaintiff can correct the defects in the complaint. *See Lopez*, 203 F.3d at 1130. When a claim cannot be saved by amendment, however, dismissal with prejudice is appropriate. *See Sylvia Landfield Tr. v. City of Los Angeles*, 729 F.3d 1189, 1196 (9th Cir. 2013).

## II.     BACKGROUND[4]

Sometime in February 2025, two KPD officers pulled Nakaahiki over while he was driving near a gas station in Waimea, Kauai. ECF No. 9 at PageID.93.

---

[4] The TAC alleges the following facts, which the Court accepts as true for the purposes of screening. *See Nordstrom v. Ryan*, 762 F.3d 903, 906 (9th Cir. 2014).

One of the officers told Nakaahiki that he had an outstanding warrant. *Id.* Both officers then asked Nakaahiki to step out of his vehicle. *Id.* at PageID.94.

Earlier the same day or a day prior, two other KPD officers had stopped Nakaahiki, but they had not said anything about an outstanding warrant. *Id.* at PageID.93. After the officers asked Nakaahiki to exit his vehicle, he tried to show them the ticket from this earlier encounter. *Id.* at PageID.94. Nakaahiki also demanded to see the warrant. *Id.*

The two officers "yanked" Nakaahiki out of his vehicle and "slam[m]ed" him to the ground. *Id.* at PageID.93. The officers held Nakaahiki down, and he could not breathe.[5] *Id.* According to Nakaahiki, he was not "resisting" or "armed and danger[ous]." *Id.* Nakaahiki says that both his arms are "dislocated" and that this could be attributable to the actions of the officers. *Id.* According to Nakaahiki, he also has supporting medical records. *Id.*

Nakaahiki commenced this lawsuit by signing the original Complaint on September 1, 2025. ECF No. 1 at PageID.8. After the Court granted Nakaahiki in forma pauperis status, ECF No. 3, the Court screened the original Complaint, *see* ECF No. 4, the FAC, *see* ECF No. 5, and the SAC, *see* ECF No. 8. The Court received the TAC on November 24, 2025. ECF No. 9. In the TAC, Nakaahiki

---

[5]Although Nakaahiki states that he could not "breed," ECF No. 9 at PageID.93, this appears to be a misspelling.

4

alleges that the two KPD officers violated his Fourth Amendment rights by using excessive force. *Id.* at PageID.93-95. Nakaahiki seeks $900 billion in damages. *Id.* at PageID.96.

### III. DISCUSSION

#### A. Legal Framework for Claims under 42 U.S.C. § 1983

"Section 1983 provides a cause of action against '[e]very person who, under color of' law deprives another of 'rights, privileges, or immunities secured by the Constitution.'" *Cornel v. Hawaii*, 37 F.4th 527, 531 (9th Cir. 2022) (quoting 42 U.S.C. § 1983) (alteration in original). To state a claim under 42 U.S.C. §1983, a plaintiff must allege: (1) that a right secured by the Constitution or laws of the United States was violated; and (2) that the alleged violation was committed by a person acting under color of state law. *See West v. Atkins*, 487 U.S. 42, 48 (1988); *Park v. City & County of Honolulu*, 952 F.3d 1136, 1140 (9th Cir. 2020).

#### B. Official Capacity Claims

Nakaahiki again names the unidentified KPD officers in both their individual and official capacities. ECF No. 9 at PageID.89.

As the Supreme Court has explained, "[o]fficial-capacity suits . . . 'generally represent only another way of pleading an action against an entity of which an officer is an agent.'" *Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985) (quoting *Monell v. N.Y. City Dep't of Soc. Servs.*, 436 U.S. 658, 690, n. 55 (1978)). Thus,

5

Nakaahiki's claims against any KPD officers in their official capacities must meet the standard for a municipal liability claim under *Monell*.

As the Court has repeatedly explained to Nakaahiki, *Monell* "established that municipalities can be liable for infringement of constitutional rights, under certain circumstances." *Horton ex rel. Horton v. City of Santa Maria*, 915 F.3d 592, 602 (9th Cir. 2019). "In particular, municipalities may be liable under § 1983 for constitutional injuries pursuant to (1) an official policy; (2) a pervasive practice or custom; (3) a failure to train, supervise, or discipline; or (4) a decision or act by a final policymaker." *Id.* at 602-03. "A plaintiff must . . . show 'deliberate action attributable to the municipality [that] directly caused a deprivation of federal rights.'" *Id.* at 603 (quoting *Bd. of Cnty. Comm'rs v. Brown*, 520 U.S. 397, 415 (1997)). "[W]hile *Monell* claims cannot predicate municipal liability for constitutional violations of its officers under the theory of respondeat superior, such claims are still contingent on a violation of constitutional rights." *Lockett v. Cnty. of Los Angeles*, 977 F.3d 737, 741 (9th Cir. 2020) (internal quotation marks and citations omitted).

As before, Nakaahiki has not plausibly alleged that the KPD officers acted pursuant to an official policy; that their actions were consistent with a pervasive practice or custom; that the KPD failed to train, supervise, or discipline the officers; or that the officers' actions were the result of decision of a final

policymaker.  Indeed, the TAC does not include any factual allegations related to the County of Kauai.  Nakaahiki's official-capacity claims therefore remain DISMISSED with prejudice.

**C.     Excessive Force Claims**

Nakaahiki alleges that the two unnamed KPD officers used excessive force during a February 2025 traffic stop.  ECF No. 9 at PageID.93-95.

"The operative question in excessive force cases is whether the totality of the circumstances justifie[s] a particular sort of search or seizure."  *Cnty. of Los Angeles v. Mendez*, 581 U.S. 420, 427-28 (2017) (quotation marks and citation omitted) (brackets in original).  "The reasonableness of the use of force is evaluated under an 'objective' inquiry that pays careful attention to the facts and circumstances of each particular case."  *Id.* at 428 (quotation marks omitted).  "Whether a use of force was reasonable will depend on the facts of the particular case, including, but not limited to, whether the suspect posed an immediate threat to anyone, whether the suspect resisted or attempted to evade arrest, and the severity of the crime at issue."  *S.R. Nehad v. Browder*, 929 F.3d 1125, 1132 (9th Cir. 2019).  In addition, "[t]he 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight."  *Graham v. Connor*, 490 U.S. 386, 396 (1989).  "That inquiry is dispositive: When an officer carries out a seizure that is

reasonable, taking into account all relevant circumstances, there is no valid excessive force claim." *Mendez*, 581 U.S. at 428.

Here, Nakaahiki alleges that the two unnamed KPD officers "yanked" him out of his vehicle and "slam[m]ed" him to the ground after he demanded to see a copy of a warrant. ECF No. 9 at PageID.93. The officers held Nakaahiki down, and he could not breathe. *Id.* According to Nakaahiki, he was not "resisting" or "armed and danger[ous]." *Id.* Nakaahiki says that both his arms are "dislocated" and that this could be attributable to the actions of the officers. *Id.* According to Nakaahiki, he also has supporting medical records. *Id.* Liberally construing these factual allegations, the Court concludes for the limited purposes of screening that the TAC states potentially cognizable excessive force claims against the two unnamed KPD officers.

### D.  Doe Defendants

As the Court has previously explained to Nakaahiki, Doe (or unnamed) defendants are generally disfavored because it is effectively impossible for the United States Marshals to serve an anonymous defendant. *See Gillespie v. Civiletti*, 629 F.2d 637, 642 (9th Cir. 1980). Sometimes, a plaintiff cannot know the names of all defendants prior to filing suit. In such instances, a plaintiff may refer to unknown defendants as John or Jane Doe, alleging specific facts showing how each Doe defendant violated his rights. The plaintiff may then use the

discovery process to obtain the names of Doe defendants and, once they are identified, seek leave to amend to name those defendants. Having concluded that the TAC states potentially cognizable excessive force claims, the Court GRANTS Nakaahiki leave to conduct limited, early discovery to determine the identities of the two unnamed KPD officers.

## IV.     CONCLUSION

(1) Nakaahiki's claims against the two unnamed KPD officers in their official capacities remain DISMISSED with prejudice.

(2) Nakaahiki states potentially cognizable excessive force claims against the two unnamed KPD officers in their individual capacities. This action cannot proceed, however, unless Nakaahiki first identifies at least one of the two officers.

(3) Nakaahiki is therefore GRANTED sixty-two days to conduct early discovery, limited to identifying the unnamed KPD officers referred to in the TAC. On or before February 2, 2026, Nakaahiki must provide the Court with the name of one or both officers involved in the February 2025 incident described above, as well as a motion to amend the TAC to add each officer's name. *See* LR10.4.

(4) Assuming that Nakaahiki satisfies the requirements set forth in (3), the Court will issue a separate order directing service by the United States Marshal on the named officer(s).

(5) Nakaahiki is cautioned that failure to comply with these instructions will result in AUTOMATIC DISMISSAL of this suit without prejudice for failing to comply with a court order. *See* Fed. R. Civ. P. 41(b).

IT IS SO ORDERED.

DATED: December 2, 2025 at Honolulu, Hawaiʻi.



/s/ Derrick K. Watson
Derrick K. Watson
Chief United States District Judge

---

*Bronson Nakaahiki v. Kauai Police Department Officers*; Civil No. 25-00401 DKW-KJM; **ORDER SCREENING THIRD AMENDED COMPLAINT AND GRANTING EARLY DISCOVERY**